**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

KATHLEEN PRESTON,

    Plaintiff,

vs.                                                               CASE NO. 3:08-cv-991-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

## **ORDER AND OPINION**

This matter is before the Court on Plaintiff's complaint (Doc. #1) seeking review of the final decision of the Commissioner of the Social Security Administration (the Commissioner) denying Plaintiff's claim for disability insurance benefits (DIB). 42 U.S.C. § 405(g). Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #9, P's Brief). Defendant filed his brief in support of the decision to deny disability benefits (Doc. #10, D's Brief). The Commissioner has filed the transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number). Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by the Order of Reference filed May 14, 2009 (Doc. #12).

The Court has reviewed the record and has given it due consideration in its entirety, including the arguments presented by the parties in their briefs and the materials provided in the transcript of the underlying proceedings. Upon review of the record, the Court found the issues raised by Plaintiff were fully briefed and concluded oral argument would not benefit the Court in making its determinations. Accordingly, the matter has been decided

on the written record. For the reasons set out herein, the decision is **REVERSED and the case is REMANDED for further proceedings**.

## PROCEDURAL HISTORY

In the instant action, Plaintiff protectively filed an application for DIB on March 13, 2006, alleging a disability onset of March 2, 2001 (Tr. 68). Plaintiff's application was denied initially and upon reconsideration (Tr. 50-52, 58-60). Thereafter, Plaintiff requested a hearing, which was held on May 1, 2008 in Jacksonville, Florida before administrative law judge (ALJ) Teresa J. Davenport (Tr. 346-83). Plaintiff appeared and testified at the hearing, as did impartial vocational expert (VE) Lisa H. Anderson (Tr. 348). Plaintiff's current counsel of record, attorney Erik W. Berger, also represented her during the underlying administrative proceedings (Tr. 348). ALJ Davenport issued a hearing decision denying Plaintiff's claim for DIB on May 13, 2008 (Tr. 11-22A). Plaintiff requested review of the hearing decision by the Appeals Council (AC); however, the AC denied Plaintiff's request (Tr. 4-6), making the hearing decision the final decision of the Commissioner. Thereafter, Plaintiff timely filed the instant complaint in federal court on October 16, 2008 (Doc. #1).

## SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION AND THE STANDARD OF REVIEW

Plaintiff is entitled to disability benefits if she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less

2

than 12 months. 20 C.F.R. § 404.1505.[1] The Commissioner has established a five-step sequential evaluation process for determining whether Plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 404.1520. Plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The ALJ found Plaintiff met the Social Security Act's insured status requirements through March 31, 2007 (Tr. 14, 66).[2] At step one of the sequential evaluation process, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 2, 2001 (Tr. 16). At step two, the ALJ found Plaintiff had the single severe impairment of fibromyalgia (Tr. 16). At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 24). The ALJ assessed Plaintiff had the residual functional capacity (RFC) to perform sedentary work, "which includes the ability to lift and carry up to ten pounds occasionally and five pounds frequently" (Tr.17-18). The ALJ also limited Plaintiff to work where she can sit or stand at will and is not required to meet a quota (Tr. 18).

At step four, the ALJ determined Plaintiff could not return to her past relevant work (PRW) as an underwriter, secretary, or data entry clerk (Tr. 21). However, at step five, based in part on the VE's testimony, the ALJ determined that, "[c]onsidering the [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist

---

[1]Unless otherwise specified, all references to 20 C.F.R. will be to the 2009 edition.

[2]Interestingly, the Court notes a date last insured (DLI) of December 31, 2006 is also reported within the record (*see* Tr. 102).

in significant numbers in the national economy that the [Plaintiff] can perform" (Tr. 22). Thus, the ALJ found Plaintiff was not under a disability within the meaning of the Social Security Act at any time from Plaintiff's alleged onset date of March 2, 2001 through the date of the decision (Tr. 22A).

The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of facts are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla - i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health and Human Serv's*, 21 F.3d 1064, 1066 (11th Cir. 1994). Therefore, in determining whether the

Commissioner's decision is supported by substantial evidence, the Court has not re-weighed the evidence, but has determined whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the Plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

## BACKGROUND AND ANALYSIS

Plaintiff, who was born July 30, 1973 (Tr. 68, 352), was thirty-four years old at the time of the administrative hearing. Plaintiff testified she is a high school graduate with a college degree in sociology and she previously worked as an underwriter, a secretary and a database manager (Tr. 353).

Plaintiff was diagnosed with fibromyalgia by her treating physician, Dr. Steven Mathews, M.D., on January 9, 2003 after experiencing pain in her leg muscles, occasional knee and rib pain, and flu-like symptoms (Tr. 332). Plaintiff stated in her Function Report - Adult that she suffers from pain and fatigue when she when sits or remains in one position too long, as well as when she bends, squats, stands or reaches (Tr. 78). Plaintiff claimed on the personal data questionnaire that she "experience[s] pain every day at varying degrees . . . [which] will abate to some degree with rest . . . but often times continues no matter what [she does]" (Tr. 90). Plaintiff's reported symptoms of fibromyalgia include difficulty sleeping, fatigue, overall achiness, leg and hip pain, hot and swollen joints, tender/trigger points, diffuse and migratory muscle spasms (Tr. 318, 323, 324, 328-332). Additionally, she has reported difficulty completing tasks, concentrating, and understanding and following instructions due to "mind fog and fatigue" (Tr. 78). Plaintiff testified that she has endocrinology issues with her thyroid, but those ailments are well-treated and no longer an issue (Tr. 356).

Plaintiff raises two issues on appeal. Plaintiff asserts the ALJ erred by failing to properly evaluate Plaintiff's mental impairments and the impact of those impairments on Plaintiff's RFC (P's Brief at 1, 13-17). In this regard, Plaintiff specifically claims the ALJ erred when she failed to acknowledge medical opinions from two non-examining psychologists, Dr. Alan Harris, Ph.D., and Dr. Carol Deatrick, Ph.D., who reviewed Plaintiff's records and reported opinions regarding Plaintiff's mental impairments (P's Brief at 15-16). Secondly, Plaintiff argues the ALJ erred by failing to properly evaluate medical opinion evidence from Plaintiff's treating physician and rheumatologist, Dr. Steven Mathews, M.D. (P's Brief at 17-22). Plaintiff asserts that although Dr. Mathews' treating notes are not ideal, there is evidence that the ALJ failed to address and a complete evaluation of all Dr. Mathews' evidence is required before the ALJ can properly reject Dr. Mathews' opinion of Plaintiff's limitations (P's Brief at 19-20).

Defendant responds to Plaintiff's first issue by asserting that the ALJ's decision demonstrates proper consideration of the relevant evidence and substantial evidence supports the ALJ's finding that Plaintiff does not have a severe mental impairment (D's Brief at 6). Defendant argues that Plaintiff's activities do not support severe mental health limitations and that Plaintiff testified fibromyalgia was the only impairment affecting her ability to work (D's Brief at 6-7). In addition, Defendant claims the opinion evidence from Drs. Deatrick and Harris, the State Agency psychological consultants, regarding Plaintiff's mental impairment was properly excluded from the ALJ's decision, since determinations concerning a claimant's residual functional capacity are specifically reserved for the ALJ (D's Brief at 9).

6

As to Plaintiff's second argument, Defendant asserts that Dr. Mathews failed to provide objective clinical findings to support his opinions (D's Brief at 11). Defendant further asserts that Dr. Mathews' opinions are externally inconsistent with the evidence of the record and internally inconsistent with his own progress notes (D's Brief at 13). Therefore, Defendant claims the ALJ properly weighed Dr. Mathews' records (D's Brief at 14).

The Court's independent review of the record as a whole, as required under *Bloodsworth v. Heckler*, 703 F.2d at 1239, reveals the ALJ has misquoted or misconstrued the record on numerous points. Upon due consideration the Court finds the ALJ determined Plaintiff was not disabled based, in part, on findings of fact that are not supported by substantial evidence. Therefore, this case must be remanded for further proceedings and reconsideration of the evidence.

**The ALJ's Decision and the Treating Physician's Evidence**

According to the evidence of record, Plaintiff began her treating relationship with Dr Steven Mathews, M.D., on January 9, 2003 (Tr. 332). Dr. Mathews, who is a rheumatologist, noted Plaintiff had been first diagnosed with fibromyalgia in May 2002 and his own impression confirmed this diagnosis (Tr. 332).[3] The record reflects Plaintiff visited Dr. Mathews on eighteen occasions from January 2003 through September 2007 (Tr. 315-332). The fibromyalgia diagnosis was reiterated on each of those occasions. Dr. Mathews

---

[3]Fibromyalgia is a syndrome of chronic pain of musculoskeletal origin but uncertain cause. *Stedman's Medical Dictionary* 671 (27th ed. 2000). The American College of Rheumatology has established diagnostic criteria that include pain on both sides of the body, both above and below the waist, as well as in an axial distribution (cervical, thoracic, or lumbar spine or anterior chest); additionally there must be point tenderness in at least 11 of 18 specified sites. *Id.*

marked specific trigger points of Plaintiff's fibromyalgia pain on five of those visits (Tr. 318, 326, 328, 329, 330). Throughout this treating period, Plaintiff's symptoms waxed and waned with comments on her condition ranging from "pretty good" to "bad cycle" to "alright" to "really bad" (Tr. 315-332). Dr. Mathews prescribed a variety of medications to treat Plaintiff's fibromyalgia throughout this period (*see id.*).

In weighing the opinion, diagnosis, and medical evidence of a treating physician, the ALJ is required to give such evidence substantial or considerable weight, unless the ALJ finds good cause to do otherwise. 20 C.F.R. § 404.1527(d); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The Eleventh Circuit has concluded "good cause" exists when a treating physician's opinion is not bolstered by the evidence, is contrary to the evidence, or when the treating physician's opinion is inconsistent with his or her own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). When discounting the weight typically afforded to evidence from a treating physician, the ALJ's findings must be supported by substantial evidence in the record. *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (the reviewing court's responsibility extends to ascertaining whether substantial evidence "supports each essential administrative finding").

In this case, there are a number of errors found in the ALJ's consideration of the evidence presented from Plaintiff's treating physician, Dr. Mathews. Perhaps the most prevalent error is the ALJ's references throughout the decision to a "Dr. Stewart," even

8

though there is no evidence of record from a Dr. Stewart (*see, e.g.*, Tr. 18, 20-21). Plaintiff's primary treating physician of record is Dr. Steven Mathews, M.D. (Tr. 315-332).[4] On the one hand, the eight (8) references to Dr. Stewart in the decision could be clerical errors scattered throughout the decision, which in itself would be concerning. On the other hand, the references to Dr. Stewart might possibly be to some evidence the ALJ reviewed, but which is not contained with the submitted record of the underlying proceedings. Under either scenario, it is impossible for this Court to determine that the ALJ gave the required careful consideration to record evidence. *See Baker v. Barnhart*, No. 03-C-2291, 2004 WL 2032316, *8 (N.D. Ill. Sept. 9, 2004) (the ALJ must "sufficiently articulate" his assessment of the evidence to assure the court that he has considered the important evidence–so that the court may trace the path of the ALJ's reasoning to his conclusion).[5]

In evaluating the progress notes from Dr. Mathews, the ALJ found the notes "indicate that [Plaintiff] had for the most part been doing fairly well" (Tr. 20). The ALJ goes on to state that Plaintiff reported to Dr. Mathews in March 2003 that "her leg pain symptoms had decreased, and that physical therapy was helping" (Tr. 20). In fact, the only progress note from March of 2003 indicates Plaintiff's leg aches had increased, not decreased (Tr.

---

[4]Plaintiff's counsel postulates that ALJ Davenport refers to "Dr. Stewart" when meaning to refer to "Dr. Mathews" (P's Brief at 19). Defendant's counsel apparently agrees with this assumption (D's Brief at 11, n.4). However, given the number of reportedly mistaken references that are found throughout the body of the entire the decision, in most instances without citation back to the record evidence, the Court is unable to accept such mistakes are wholly harmless.

[5]Unpublished opinions may be cited throughout this order as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent.  is expressly permitted under Unpublished opinions may be cited as persuasive authority pursuant to Rule 32.1, Fed. R. App. P. and 11th Cir. R. 36-2.

9

331). As already mentioned, the progress notes from Dr. Mathews, although somewhat lacking in detail, indicate Plaintiff's symptoms were sometimes worse, sometimes "better" or "alright" throughout the treatment period (*see* Tr. 315-332).

ALJ Davenport finds that "... the [Plaintiff] only went to Dr. Stewart a few times a year, and that despite the [Plaintiff's] testimony to regular quarterly visits, she only saw Dr. Stewart three times in 2006 and only once in 2007 according to the progress notes in the medical evidence of record" (Tr. 20). Notwithstanding the plausibly incorrect references to Dr. Stewart, the evidence reflects Plaintiff saw Dr. Mathews six times in 2003, two times in 2004, five times in 2005, three times in 2006, and two times in 2007 (Tr. 315-32). To the extent the ALJ's decision relies otherwise, it is not supported by substantial evidence. Moreover, Plaintiff did not directly testify she regularly saw her treating physician on a quarterly basis. In response to the question, "Now you see him every three months or so?" Plaintiff answered, "Right, on average. Exactly." (Tr. 358). The evidence reflects Plaintiff saw Dr. Mathews every three months or so, on average.

The ALJ further finds there are no records of blood tests performed by Dr. Stewart (or Dr. Mathews). To the extent the ALJ is attempting to discount Dr. Mathews' medical opinions based on a perceived failure to order blood work testing for Plaintiff, that effort fails for a number of reasons. First, fibromyalgia is known to be a disabling impairment for which there are no objective tests to confirm the condition. *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2nd Cir. 2003). The Eleventh Circuit has recognized that "fibromyalgia often lacks medical or laboratory signs, and is generally diagnosed mostly on an individual's described symptoms," such that "the hallmark of fibromyalgia" is a lack of objective evidence. *Somogy v. Comm'r of Soc. Sec.*, No. 09-12097, 2010 WL 529297 (11th

10

Cir. Feb. 16, 2010) *citing Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Second, as Plaintiff pointed out in her testimony, and the record confirms, another of Plaintiff's treating sources routinely ordered blood work, the results of which are in the record (*see* Tr. 259, 263, 266, 269, 271, 273, 275, 281-82, 283, 335). The ALJ appears to take issue with the submitted blood test results in her finding, "there are no lab results from any test ordered by any physician the [Plaintiff] has seen, which indicate signs of immune system issues typical of fibromyalgia" (Tr. 20). To the extent the ALJ relied on a lack of particular objective test results in her decision to deny Plaintiff disability benefits, that determination is contrary to legal precedent in a fibromyalgia case and is not supported by substantial evidence. *See Moore v. Barnhart, supra*, 405 F.3d at 1211, *Green-Younger v. Barnhart, supra*, 335 F.3d at 108; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243-46 (6th Cir. 2007). In fact, in the recently issued unpublished opinion of *Somogy v. Comm'r of Soc. Sec.*, the Eleventh Circuit found, "[t]he lack of objective clinical findings is, at least in the case of fibromyalgia, ... insufficient alone to support an ALJ's rejection of a treating physician's opinion as to the [plaintiff's] functional limitations." 2010 WL 529297 at *7.

In determining the weight to afford the opinion evidence from Dr. Stewart (or Dr. Mathews), the ALJ states:

> In considering the opinion evidence, the findings of Dr. Stewart, as recorded in his progress notes at 15F, are given considerable weight. However, his opinion as articulated in exhibit 4F cannot be given any weight because this opinion is wholly at odds with his progress notes.

(Tr. 21.) Exhibit 15F contains the evidence of Plaintiff's office visits with Dr. Mathews (Tr. 315-32). Exhibit 4F is comprised of a "Fibromyalgia Residual Functional Capacity Questionnaire" of Plaintiff's condition completed by Dr. Mathews on March 10, 2006 (Tr.

11

163-68).[6] Contrary to the ALJ's finding, Dr. Mathews' progress notes on Plaintiff are not "wholly at odds" with his expressed opinion. In the 2006 questionnaire, Dr. Mathews noted Plaintiff was positive for trigger point tenderness at 12 of 18 points (Tr. 341). He also noted Plaintiff had been diagnosed with fibromyalgia and osteoarthritis, which were chronic and incurable, and often debilitating (Tr. 341). Dr. Mathews reported Plaintiff, in his opinion, could sit less than two hours in an eight hour day and could stand/walk less than two hours in an eight hour day, but was capable of low stress jobs where she could shift positions at will and take unscheduled breaks every hour (Tr. 342-43). Dr. Mathews also indicated his belief that Plaintiff would likely miss more than four days of work per month and was limited functionally to occasionally looking down or holding her head static, but rarely able to look up, twist, stoop or bend, or climb stairs, and never climb ladders, crouch or squat (Tr. 344). The specific functional limitations assessed by Dr. Mathews are significant, but to the extent the ALJ found them to be "wholly at odds" with Dr. Mathews' treatment notes of record, that finding is simply inaccurate. There is nothing in the progress/treatment notes of Dr. Mathews that contradict, or is inconsistent with his opinion of Plaintiff's physical limitations (*see generally*, Tr. 315-332).

The ALJ must look elsewhere in the record for substantial evidence to support any effort to discount Dr. Mathews' medical opinion of Plaintiff's physical limitations. The ALJ's blanket statement that she has "considered the full medical evidence of record, and all the

---

[6]Dr. Mathews also completed a "Physical Residual Functional Capacity Questionnaire" on April 10, 2008 (Exh. 18F, Tr. 341-45). ALJ Davenport states that this second questionnaire was completed more than a year after the Plaintiff's date last insured, without reference to a time period prior to the DLI, which "makes the conclusions therein irrelevant to the issue at hand, even if they were credible" (Tr. 20).

12

objective medical evidence supports [the] conclusion that the [Plaintiff] was no more limited than is stated in the residual functional capacity..." (Tr. 21) is insufficient to give less weight to the treating physician's opinion than is required in the Regulations. *See Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985) (finding the ALJ's statement that he "has carefully considered all the testimony at the hearing, the arguments made, and the documents described in the List of exhibits" was not enough to determine if proper legal standards were applied and what weight was accorded the evidence considered).

## CONCLUSION

Accurate consideration of all the medical evidence of record is mandated so that the ALJ can correctly determine a claimant's residual functional capacity. *See* 20 C.F.R. § 404.1545. While each misstatement of the record when viewed individually may not constitute such error as to require reversal, the numerous misstatements taken as a whole reveal an inaccurate review of the record. Thus, the Court does not find the decision of the ALJ is based on substantial evidence and this case must be **remanded** to the Commissioner for reevaluation of the record as a whole.

On remand, the ALJ must consider the opinions of all of Plaintiff's examining and treating medical sources, as well as the opinions of non-examining medical sources, and give the proper weight to the testimony and statements of each as required by the law of this circuit. *See Lewis v. Callahan,* 125 F.3d at 1440-41*; Sharfarz v. Bowen*, 825 F.2d 278, 279-81 (11th Cir. 1987). If the ALJ finds reason to disregard the opinion of a treating or examining physician or psychiatrist, she must provide specific reasons for doing so and these reasons must be supported by substantial evidence in the record. Furthermore, on

remand, the Commissioner may hold other proceedings as he deems necessary, but in any event shall reevaluate the medical evidence, reassess Plaintiff's credibility and Plaintiff's residual functional capacity in light of this opinion.  In accordance with binding precedent, the Court has not and may not re-weigh the evidence to make its own determination on Plaintiff's asserted disability.

The Court cautions Plaintiff, however, that this opinion does not suggest Plaintiff is entitled to disability benefits.  Rather, it speaks only to the process the ALJ must engage in and the findings and analysis the ALJ must make before determining whether Plaintiff is disabled within the meaning of the Social Security Act. *Phillips v. Barnhart*, 357 F.3d 1232, 1244 (11th Cir. 2004).

## DIRECTIONS AS TO JUDGMENT

The Clerk of Court is directed to enter judgment consistent with this Order and Opinion, and thereafter to close the file.  The judgment shall state that if Plaintiff were to ultimately prevail in this case upon remand to the Social Security Administration, any motion for attorney fees under 42 U.S.C. § 406(b) must be filed within fourteen (14) days of the Commissioner's final decision to award benefits.  *See Bergen v. Commissioner of Social Security*, 454 F.3d 1273, 1278 (11th Cir. 2006); *compare* Fed. R. Civ. P. 54(d)(2)(B); M.D. Fla. Loc. R. 4.18(a).

**DONE AND ORDERED** at Jacksonville, Florida this 18th day of March, 2010.

Copies to all counsel of record

*Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge

14